**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WENDELL WEAVER,<br><br>Petitioner,<br><br>v.<br><br>RANDY PFISTER, Warden,<br>Stateville Correctional Center,[1]<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 12 C 10100<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Petitioner Wendell Weaver, currently incarcerated at Stateville Correctional Center, is serving a forty-year sentence for first degree murder. Weaver has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Because Weaver has not shown that the Illinois Appellate Court's decisions on his choice of counsel, ineffective assistance of counsel, and false testimony claims were contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, and because his "other crimes" evidence due process claim is procedurally defaulted and, even if considered on the merits, not subject to federal habeas relief, the Court denies Weaver's petition for a writ of habeas corpus.

**BACKGROUND**

The Court will presume that the state court's factual determinations are correct for the purposes of habeas review, as Weaver has not pointed to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The

[1] Randy Pfister is presently the warden at Stateville Correctional Center and is substituted as the proper Respondent in this matter. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Bridges v. Chambers*, 425 F.3d 1048, 1049–50 (7th Cir. 2005); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Court thus adopts the state court's recitation of the facts and begins by summarizing the facts relevant to the petition.

## I.      Pre-Trial Motions

Police officers arrested Weaver on August 12, 2003 for the murder of Randy Sanders. Attorney Charles Murphy filed his appearance on Weaver's behalf three days later.  On August 30, 2004, the State moved to disqualify Charles Murphy based on a conflict of interest.  The State argued that Charles Murphy had represented Rondell Traywick in a controlled substance matter and the State planned to call Traywick as a witness against Weaver in this case.  The trial court heard arguments and granted the State's motion on September 14, 2004.  The court allowed William Murphy, Charles' brother, to file an appearance on behalf of Weaver.

Also before the trial, the State moved to admit evidence of Weaver's other crimes and bad acts, specifically the fact that Weaver pointed the gun that was later identified as the murder weapon at Officer Rogilio Pinal during an unrelated incident and police chase on September 9, 2002.  Although the defense objected, the trial court allowed the evidence that Weaver pointed the gun at Pinal, but disallowed evidence of the charges from that incident.

## II.      Weaver's Trial and Conviction

Sanders was fatally shot while driving his car across Washington Boulevard at approximately 1:00 p.m. on April 4, 2002.  At trial, the State called Danny Callico who testified that he was a friend of the victim—they sold drugs together at Trumbull and Chicago Avenues. Callico was serving a ten-year sentence for the sale of a controlled substance at the time of Weaver's trial.  Callico testified that, on April 4, 2002 at approximately 8:30 or 9:00 a.m., he met Sanders, Jeffrey Smith, and Lamont Delaney on Madison Street.  The men then drove away in Sanders' new Chrysler automobile and returned around 12:30 p.m. or 1:00 p.m.  At that point,

Smith left the group and Sanders drove to a McDonald's restaurant parking lot, where the men smoked marijuana. Callico rode in the front seat and Delaney rode in the back seat.

Callico further testified that Sanders then drove to Madison Street, turned right on Laramie and right again onto Service Drive. When Sanders was stopped at a stop sign at the intersection of Service Drive and Washington Boulevard, Weaver and others fired gunshots into Sanders' car. Hearing the shots, Callico crouched down on the floor of the car and, looking toward the driver's side window, saw Weaver outside the window firing shots into the car. The bullets struck Sanders, but because his foot was still on the gas pedal, the car moved across Washington Boulevard and crashed into the steps of a church across the street. Callico testified that another car struck Sanders' car as it crossed Washington Boulevard. Callico fled the scene, called the police from a nearby store, and then returned to see an ambulance transporting Sanders to the hospital. Callico did not speak to police at the scene because he feared that the shooters were still in the area.

Callico did speak with the police on April 11, 2002. He did not identify Weaver as the shooter because he believed that he and his friends would "take care of" Weaver themselves. At the time of the shooting, Sanders and Callico were both members of the Traveling Vice Lords street gang. Callico did, however, tell the police that he believed Weaver, "Octavious," and "Lupe" were involved in the shooting. Approximately one year later, while he was incarcerated on a narcotics offense, Callico informed police that Weaver was the shooter.

The evidence presented at trial also included that the police located seventeen cartridge cases at the scene—some fired from a .45 automatic weapon and some from a .9 millimeter Luger. Sanders received three gunshot wounds to his head and chest and died from those wounds. The police recovered two bullets and two bullet fragments.

At trial, Officer Pinal testified that, months after the shooting, on September 9, 2002 at 2:24 p.m., he was on duty at 3843 W. Roosevelt Road when he saw Weaver place a handgun in his waistband. Weaver then looked at Pinal, pulled out the handgun, and ran southbound. Pinal and his partner chased Weaver, who turned and pointed his handgun at Pinal. Weaver continued running and threw the handgun into a vacant lot, where Pinal recovered it. Pinal ultimately caught and arrested Weaver, who was in possession of crack cocaine. The handgun was a .9 millimeter, semi-automatic Luger. The Illinois State Police Crime Lab analyzed the gun after receiving it. An Illinois State Police forensic examiner opined at trial that the bullet casings at the scene of the Sanders shooting were fired from that particular gun.

The State also called Clifton Lewis, a bystander, who witnessed the shooting while driving in a car with his daughter, Rosemarie Swiney.[2] Lewis testified that he turned eastbound from Laramie onto Washington Boulevard when he heard shots. Lewis saw two cars side-by-side and a passenger in one car shooting into the other car. Lewis could not identify the passenger but saw the other car crash into the church steps. Swiney was not available to testify at the time of the trial because she was ill and could not travel from Indiana. In September 2005, at the conclusion of his trial, a jury convicted Weaver of first degree murder in the shooting death of Sanders.

## III. Direct Appeal

Weaver raised the following claims on direct appeal:

(1) the trial court violated petitioner's right to counsel by improperly disqualifying Charles Murphy;

(2) trial counsel was ineffective for:

[2] The Illinois Appellate Court identifies Mr. Lewis' daughter as "Rosemarie," while Weaver calls her "Rosemary Swiney." The Court will use the Illinois Appellate Court's spelling, which matches the police reports. *See* Ex. B-2 to Pet.

(a) failing to cross-examine Callico on his prior statement to the police that the shooter was on foot;

(b) eliciting from Officer Pinal the prejudicial testimony that Weaver was in possession of cocaine when arrested for the unrelated charge in September 2002;

(c) failing to investigate and call Tamisha James as an alibi witness;

(d) failing to call Fabian Smith, Napoleon Weaver, and Tawanica Adams regarding the September 2002 gun incident;

(e) failing to call Lamont Delaney to testify that Callico told him he did not see the shooter;

(f) failing to call or depose Rosemary Swiney;

(3) the trial court erred by not holding an evidentiary hearing on Weaver's counsel-of-choice and ineffective-assistance claims; and

(4) the trial court erred in denying Weaver's motion to bar the State from introducing evidence that Weaver pointed a gun at Pinal during the September 2002 incident.

On March 29, 2007, the Illinois Appellate Court rejected Weaver's arguments and affirmed his conviction and sentence. Petitioner filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, again arguing that (1) he was denied his Sixth Amendment right to counsel of choice; (2) trial counsel was ineffective for: (a) failing to cross-examine Callico about the shooter being on foot; (b) eliciting testimony that Weaver was in possession of cocaine when arrested in September 2002; (c) failing to call James as an alibi witness, Delaney for Callico's prior statement that he did not see the shooter, and three witnesses to testify Weaver did not have the gun during the September 2002 incident; and (d) failing to call or depose Swiney. Weaver also argued that the trial court's refusal to hold a hearing on counsel's incompetence was error. The PLA was denied on September 26, 2007. Weaver did not file a petition for a writ of certiorari with the United States Supreme Court.

## IV.     State Post-Conviction Proceedings

With the assistance of counsel, Weaver filed a timely post-conviction petition in the Circuit Court of Cook County pursuant to 725 Ill. Comp. Stat. 5/122-1 on June 25, 2008. Weaver argued that: (1) he was actually innocent, based on newly discovered evidence; (2) his due process rights were violated by the State's use of perjured and coerced testimony; and (3) trial counsel was ineffective for failing to discover and present the perjured testimony claim, that the murder was committed by another individual, and that Weaver did not have possession of the gun during the September 2002 incident.  The circuit court dismissed the petition on the State's motion and dismissed Weaver's motion to amend and reconsider.

While his post-conviction petition was pending, Weaver filed a *pro se* petition for relief from judgment in the Circuit Court of Cook County pursuant to 735 Ill. Comp. Stat. 5/2-1401. That petition brought the following claims: (1) that his conviction was flawed due to the perjured testimony of Callico; and (2) the indictment was void due to the perjured grand jury testimony of Callico.  The trial court dismissed this petition as both untimely and meritless.

Weaver brought a consolidated appeal of the denial of his post-conviction and 2-1401 petitions.  Weaver argued: (1) actual innocence; (2) ineffective assistance of trial counsel for failing to call four witnesses who would have impeached Callico's testimony, demonstrated that another individual committed the murder, and disassociated Weaver from the gun in the September 2002 arrest incident; and (3) the conviction and indictment were wrongfully obtained through the use of perjured testimony.  The appellate court affirmed the trial court's denial of the post-conviction petition on the merits and the dismissal of the 2-1401 petition as untimely and subsequently denied Weaver's petition for rehearing.  *See People v. Weaver*, 2012 IL App (1st) 092799, 2012 IL App (1st) 101482-U, 2012 WL 6935270 (2012).  Weaver filed a PLA

presenting the claims that: (1) the appellate court wrongly applied a heightened standard to his actual innocence claim; (2) the appellate court wrongly decided the ineffective assistance of trial counsel claims; and (3) the perjured testimony claim warranted an evidentiary hearing. On September 26, 2012, the Illinois Supreme Court denied the PLA. Weaver did not file a petition for a writ of certiorari with the United States Supreme Court but timely filed his federal habeas corpus petition with this Court.

## LEGAL STANDARD

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407.

## ANALYSIS

Weaver has asserted four grounds for relief: (1) he was denied his Sixth Amendment right to counsel of his choice; (2) trial counsel was ineffective for: (a) eliciting evidence harmful to Weaver; (b) failing to call favorable witnesses; and (c) failing to adequately cross-examine and impeach Callico; (3) a due process violation due to the State's use of Callico's coerced and

perjured testimony; and (4) a due process violation due to the trial court's admission of other crimes evidence related to the September 2002 arrest incident. Respondent does not contest the timeliness of the petition or that Weaver exhausted his state court remedies. Respondent argues, however, that the Court should deny the petition because the state court properly resolved Weaver's choice of counsel, ineffective assistance of counsel, and perjured testimony claims. Respondent also argues that the admission of other crimes evidence claim is procedurally defaulted, not cognizable on federal review, or, if reviewed on the merits, was properly resolved by the state court.

**I.      Sixth Amendment Choice-of-Counsel Claim**

Weaver's first claim is that the trial court disqualified Charles Murphy without an evidentiary hearing on what he describes as a "sham motion" by the State and thereby denied his Sixth Amendment right to counsel of his choice. Respondent argues the state appellate court's rejection of this claim was neither contrary to, nor an unreasonable application of *Wheat v. United States*, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). The Court agrees.

A federal court may grant habeas relief on a § 2254(d) claim if the state court's decision was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court precedent. *See Harrington v. Richter*, 562 U.S. 86, 100, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011). The Court assesses the reasonableness of the state court's decision, not the adequacy of its reasoning, and the Court may only grant relief "where there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Id.* at 102. Therefore, the question on this claim is not whether this Court disagrees with the Illinois Appellate Court's application of *Wheat* to the disqualification of Charles Murphy, but whether that court's decision was "so lacking in justification" that it presents "an

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102–103 ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

The facts of this issue, as stated by the appellate court, show that Charles Murphy represented Weaver from right after his arrest to almost a year later. On August 30, 2004, the State moved to disqualify Murphy due to his prior representation of Rondell Traywick, who was one of the State's witnesses against Weaver. The State's discovery contained statements from Traywick that an individual named "Lupe" (deceased at the time of the trial) told Traywick that he and Weaver were involved in the Sanders shooting, that Lupe told Traywick that Sanders' "cake was baked," and that Weaver told Traywick, in reference to Sanders, "we slip up on ol' boy." Ex. C at 7–8.[3] Murphy had visited Traywick in jail one month prior "and obtained a statement that was consistent with the police report regarding Traywick's violation of probation."[4] *Id.* at 8. Murphy also discussed Traywick's probation, his pending criminal charges, and his intention to accept the State's plea deal. *Id.*

[3] All references to exhibits, unless otherwise indicated, are to exhibits filed by Respondent as the State Court Record at Doc. 20.

[4] From this limited description by the Illinois Appellate Court, the import of Traywick's alleged statement is not entirely clear. In the disqualification hearing, Murphy argued that Traywick initially gave a statement to the police that did not implicate Weaver, then, before Murphy interviewed him, Traywick gave another statement to homicide detectives implicating Weaver in the Sanders shooting. Murphy then represented to the trial judge that Traywick gave a statement to him that was consistent with the first, non-implicating statement and inconsistent with the second, implicating statement. Ex. A-5 to Reply at 17–19, Ex. A-6 to Reply at 12–13. In concluding that the appearance of impropriety supported disqualification, the trial court explicitly made no factual finding on the contents of Traywick's various alleged statements. *See* Ex. A-6 to Reply at 21 ("[T]he fact that counsel says that the witness may recant or made consistent statements with that statement to police officers at one time or another really is a conclusory statement on his part and something that he can assert. And I'm not saying that, you know, I wouldn't necessarily conclude the same thing after hearing what these other statements were, but that is not something that I think that the Court at this point in the process is required to delve into in detail to determine[.]").

The Illinois Appellate Court found that the trial court did not abuse its discretion in disqualifying Murphy. The appellate court explained that the following four factors had been properly applied to the decision:

> (1) the likelihood that defense counsel will have divided loyalties; (2) the State's right to a fair trial; (3) "the appearance of impropriety should the jury learn of the conflict[;]" and (4) the likelihood that defense counsel's continued representation "will provide grounds for overturning [the] conviction."

Ex. C at 7 (quoting *People v. Ortega*, 808 N.E.2d 496, 502, 209 Ill.2d 354, 283 Ill. Dec. 530 (2004)). The appellate court explained the trial judge "found an appearance of impropriety of Murphy's concurrent representation of defendant and Traywick," "considered the probability that Murphy's continued representation of Traywick could leave defendant's conviction vulnerable to being overturned, as both the jury and the public could conclude that the trial was unfair," and concluded, "the court properly weighed defendant's right to counsel of his choice versus the State's and the public's right to a fair trial and the judicial interest in the integrity of the verdict, as required by *Ortega*." *Id*. at 11.

The appellate court's analysis of and decision on this issue was reasonable. Under *Wheat*, a trial court "must recognize a presumption in favor of a petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." 486 U.S. at 164. Importantly, under *Wheat*, "[t]he evaluation of the facts and circumstances of each case . . . must be left primarily to the informed judgment of the trial court." *Id.* The appellate court identified the correct federal legal precedents and applied those precedents reasonably to the facts of this case. The appellate court reviewed the trial court's application of the *Ortega* factors and concluded that the trial court, which is closer to the facts of the case and whose evaluation of such is given deference, determined that Murphy's past (and possibly concurrent) representation of a potential witness

against Weaver created an appearance of impropriety that undermined the court's responsibility to ensure a fair trial. In support of his petition, Weaver points the Court to many of the same disqualification cases considered by the appellate court. However, the appellate court's distinguishing of those cases and its overall decision are not so "lacking in justification" that reversal is warranted. *See Harrington,* 562 U.S. at 102–103 ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (internal quotation marks omitted)).

Weaver argues the appellate court did not analyze this issue with the presumption that he was entitled to his counsel of choice, therefore its decision is in conflict with *Wheat*. The appellate court began its discussion with an acknowledgment of the Sixth Amendment protection of a defendant's right to counsel of his choice. *See* Ex. C at 7. It then cited *Wheat* and *Ortega*, both of which establish the presumption, and went on to analyze the trial court's decision using the four *Ortega* factors. *Id.* at 7, 11. The appellate court's analysis clearly took the presumption of counsel-of-choice as its starting point.

Weaver further argues that because he waived the conflict of interest, the appellate court's decision is wrong. However, *Wheat* explains that trial courts "have an independent interest in ensuring that . . . legal proceedings appear fair to all who observe them," therefore a defendant's waiver does not necessarily end the analysis. 486 U.S. at 160. That the appellate court did not credit Weaver's waiver over the trial court's finding of an appearance of impropriety is well within *Wheat*'s grant of "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial," but also in the "more common cases," "where a potential for conflict exists which may or

may not burgeon into an actual conflict as the trial progresses." *Id.* at 163. The appellate court considered the waiver issue, noting even "that defendant, in essence, acknowledged the potential for a conflict of interest when he agreed to waive the conflict." Ex. C at 11. That the appellate court approved the trial court's finding overruling the waiver is not sufficient basis for constitutional relief.

Weaver also argues that the State did not overcome its "heavy burden" to show that disqualification was justified because the motion to exclude was not specific about what statements Traywick would make at trial or what exactly Traywick said during the interview with Murphy. *See In re Grand Jury Proceedings*, 859 F.2d 1021, 1026 (1st Cir. 1988) ("Although the district court stated that it had found an actual conflict of interest, it did not identify any *specific* conflict, actual *or* potential."). Weaver further argues that the State should have withdrawn the motion when it realized that Traywick would have no relevant evidence or when it admitted that neither party knew exactly what Traywick would say on the stand. Weaver also contends that Murphy's offer to limit the cross-examination of Traywick meant the trial court should not have disqualified him. Finally, Weaver discusses many of the cases he relied on in the Illinois courts to support his overall argument that the trial court erred in disqualifying Murphy.[5] However, arguments that go to the merits of the trial and appellate courts' decisions

[5] Petitioner cites *United States v. Gonzalez-Lopez*, 399 F.3d 924, 932–33 (8th Cir. 2005), and *Flanagan v. United States*, 465 U.S. 259, 268, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984), to argue that the Sixth Amendment right to counsel-of-choice results in automatic reversal with no showing of prejudice required. Both *Gonzalez-Lopez* and *Flanagan* deal with the standard a federal appellate court uses to review a federal trial court's disqualification decision—not the deferential habeas review of a federal court to a state appellate court's decisions. In addition, *Gonzalez-Lopez* is a case from the Eighth Circuit and therefore this Court is not required to follow it as precedent and *Flanagan*, as discussed in *Gonzales-Lopez*, makes no holding on the question of automatic reversal on direct appeal. *See Gonzalez-Lopez*, 399 F.3d at 932–33 ("The Supreme Court has not decided whether harmless error review applies to the denial of the Sixth Amendment right to be represented by the attorney chosen by the defendant. In *Flanagan v. United States*, however, the Court hinted that the denial of the right to counsel of choice may result in automatic reversal by comparing the right to rights which if violated result in automatic reversal." (citation omitted)).

are not something the Court can consider on habeas review—the Court may only assess the reasonableness of the state appellate court's decision, in light of Supreme Court precedent, not whether that decision was adequately reasoned or even if that decision is necessarily correct. *See Harrington*, 562 U.S. at 102. The appellate court concluded that the trial court "properly weighed defendant's right to counsel of his choice versus the State's and the public's right to a fair trial and the judicial interest in the integrity of the verdict." Ex. C at 11. That decision was not an unreasonable application of *Wheat*, especially in light of Murphy's past (and likely concurrent) representation of Traywick and Traywick's conflicting statements about Weaver's participation in the murder, including the possibility that Traywick's statement to Murphy retracted his prior statement implicating Weaver.

Similarly, Weaver argues the appellate court relied on alleged facts about his relationship with Traywick that the trial court did not consider during the motion to disqualify, including that Weaver was Traywick's "boss" and arranged for Murphy to represent Traywick in a drug case. This Court's review extends to the reasonableness of the ultimate decision, not the way the appellate court reached that decision, and, furthermore, the appellate court's findings of fact are presumed correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Schomig*, 283 F.3d at 846. Weaver has not pointed the Court to any evidence disputing that this information was before the trial court. The Court has reviewed the disqualification brief and transcripts attached to Weaver's Reply and although it does not see mention of this particular information in those materials, it cannot know exactly what the trial court had before it during its decision-making. In addition, that the appellate court included these details, even if erroneous or somehow improperly inserted, does not undercut its overall decision, which is based on sufficient other grounds to be reasonable.

As the Supreme Court has explained:

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by a lawyer whom he prefers.

*Wheat*, 486 U.S. at 159. The Illinois Appellate Court's decision that the trial court did not abuse its discretion in disqualifying Murphy is reasonable and cannot justify habeas relief.

## II.     Ineffective Assistance of Trial Counsel Claims

Weaver argues that his substitute trial counsel was ineffective in the following six ways: (1) for failing to cross-examine Callico on a prior statement to police that the shooter was on foot; (2) for failing to call Fabian Smith, Napoleon Weaver, Tawanica Adams, and Monique Davis to testify that Weaver did not have the gun when he was arrested during the September 2002 incident; (3) for failing to call Delaney to testify that Callico stated to him after the shooting that he could not identify any of the shooters; (4) for failing to call or depose Rosemarie Swiney; (5) for failing to call Jason Dortch and Monique Tolliver to testify that Lupe confessed to them that he shot Sanders; and (6) for eliciting testimony that Weaver had cocaine when arrested. Respondent argues that the appellate court's rejection of these arguments, whether on direct or post-conviction review, was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To demonstrate ineffective assistance of counsel, Weaver must show that his counsel's performance "fell outside the wide range of professionally competent assistance" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (citation omitted) (internal quotation marks omitted). That means counsel's performance fell

below an "objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

On habeas review, the Court does not evaluate trial counsel's performance *de novo*; rather it determines whether the state court's application of *Strickland* was unreasonable. *See Harrington*, 562 U.S. at 101. The Court must give "deference and latitude" to the state court's decision. *Id.* "The bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen*, 555 F.3d at 600.

**A. Failure to Cross-Examine Callico on Prior Statement**

Weaver's first claim is that trial counsel was ineffective for failing to cross-examine Callico, the only witness who identified Weaver as the shooter, on his prior statement to the police that the shooter approached the car on foot. In a statement to the police given a year after the shooting, Callico identified Sanders as the shooter and stated that Sanders approached the car on foot. Weaver argues that trial counsel should have used this statement to impeach Callico's identification of him as the shooter because two bystanders gave testimony that the shots were fired from a car. Weaver argues that Callico's prior statement is in direct conflict with these witnesses' statements and would have undercut Callico's identification and credibility. And because Callico was the only witness to identify Weaver, without this testimony, the State would not have had sufficient evidence to convict.

Respondent defends the court's rejection of this claim as reasonable. Reviewing the appellate court's decision on this issue deferentially, as the Court must, *see Harrington*, 562 U.S.

at 101, the Court agrees. It was not unreasonable for the appellate court to find that counsel's performance met the *Strickland* standard.

**1. Deficient Performance**

The appellate court determined that trial counsel's performance was not deficient because he gave Weaver "vigorous representation" by "thoroughly cross-examin[ing] Callico and discredit[ing] him" about his vantage point during the shooting and Weaver's position at the scene. *See* Ex. C at 13–14. Trial counsel drew from Callico that he was a gang member, sold heroin, and had been using drugs just prior to the shooting. Counsel also established through cross-examination the idea that Callico himself may have arranged the murder so he could take over the victim's drug business. The appellate court further held that the assertion of ineffectiveness for failing to point to the inconsistency between the shooter being on foot in Callico's police statement and the bystanders' testimony was speculative because Weaver did not show that Callico would have testified consistently with his prior statement or that the bystanders' testimony would have ultimately been inconsistent with Callico's. This Court agrees that Weaver's counsel extensively cross-examined Callico, impeached his credibility regarding what he could see, and threw his reputation and possible motivations into question. The Court cannot find the appellate court's holding on this claim to be unreasonable.

Respondent maintains that counsel's failure to impeach Callico on the prior statement, when viewed in light of his overall competent representation, is not enough to find him ineffective. The Seventh Circuit has explained that while "a single error may suffice if that error is sufficiently egregious and prejudicial," a single oversight by counsel does not violate the Sixth Amendment. *See Williams v. Lemmon*, 557 F.3d 534, 538 (citation omitted) (7th Cir. 2009) (internal quotation marks omitted). "[T]he question is not whether the lawyer's work was error-

free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Id.* Examining trial counsel's performance as a whole, the Court cannot say that his failure to question Callico about his statement that the shooter was on foot is sufficiently egregious to undercut what the appellate court otherwise described as "vigorous representation."

In support of the claim of insufficient performance, Weaver argues that trial counsel must have been aware of the police report because he attempted to argue during closing argument that Callico previously said he saw the shooter on foot. The trial judge would not allow that argument, however, because counsel had not asked questions to establish whether Callico saw Weaver on foot or in a car. That defense counsel tried to make this argument at closing implies that counsel meant to or thought that he had asked Callico these particular questions. However, whether counsel knew of, and meant to cross-examine Callico on, the police report or did not know about the police report, his impeachment of Callico was thorough and the failure to question specifically on the prior statement does not make the appellate court's decision unreasonable. Weaver also argues that Callico's statement to the police about the shooter being on foot is physically impossible because the shell casings at the scene indicated a drive-by style shooting. Weaver does not elaborate as to how the shell casings support his ineffective assistance of counsel claim, but the Court notes that the shell casings were admitted into evidence at trial.

Weaver further argues that trial counsel was plainly ineffective when he promised the jury in opening statements that the prosecution's sole eyewitness was untrustworthy, but then failed to impeach Callico during questioning. Weaver cites a case from another circuit that finds that the failure to present strong evidence referred to in an opening statement can amount to

ineffective assistance of counsel. *See Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988) (failure

to call medical experts). The Court notes that Weaver did not present this argument to the state

appellate court. *See* Exs. D & F. In any event, this argument is without merit. The state

appellate court found that trial counsel thoroughly cross-examined and discredited Callico.

Weaver takes issue with counsel's failure to focus on the shooter-on-foot element of the prior

statement, but counsel did not fail to impeach Callico entirely. Trial counsel's performance did

not amount to a failure to deliver strong evidence as promised to the jury in his opening

statement.

Weaver further states that the case law does not require that he show Callico would have

testified consistently with the second police report or that the bystander would have directly

contradicted this evidence. Weaver argues, "[i]f a failure to cross-examine may be justified on

the basis that the examiner did not know how the witness would answer the questions that would

just about eliminate the obligation to cross-examine any witness." Reply at 62. For this

proposition, Weaver cites several cases from other circuits and districts in which the courts found

counsel's failure to impeach to be ineffective assistance. *Lindstadt v. Keane*, 239 F.3d 191, 204

(2d Cir. 2001) (failure to investigate and challenge credibility of victim of alleged abuse);

*Driscoll v. Delo*, 71 F.3d 701, 710 (8th Cir. 1995) (failure to question on prior statement that did

not identify the defendant as the attacker); *Harris v. Senkowski*, 298 F. Supp. 2d 320, 340

(E.D.N.Y. 2004) (failure to confront the victim (and sole identifier) with an inconsistent prior

description of her attacker given within thirty minutes of the crime); *Harris v. Artuz*, 288 F.

Supp. 2d 247, 259 (E.D.N.Y. 2003) (failure to confront witness with contradictory medical

evidence about victim's injuries). These cases are not precedential in this Court, therefore the

Court can look to their reasoning but need not follow them. In any event, none are directly

analogous to this case. Most deal with prior statements that would directly undercut the witnesses' identification of the defendant. Here Callico's prior statement still identified Weaver as the shooter, but put him outside, rather than inside, the car. The Court understands the appellate court to have meant that the content of Callico's cross-examination testimony was unknown, making the effect of that testimony speculative and counsel therefore not *per se* ineffective for failing to ask a question on it, which can be contrasted with a victim's prior statement describing her attacker as over eight inches shorter and one hundred pounds lighter. *See Sendkowski*, 298 F. Supp. 2d at 340. The state court's decision was not unreasonable on this basis.

**2. Prejudice**

The appellate court concluded that, "in light of the overwhelming evidence of defendant's guilt, including the eyewitness testimony and the weapon identification, [Weaver] has not shown that there was a reasonable probability that the result of his trial would have been different had [trial counsel] cross-examined Callico on this police report." Ex. C at 13. Respondent argues that the appellate court's decision was, at the very least, not objectively unreasonable owing to the gun evidence and otherwise thorough impeachment of Callico. The Court will address Weaver's counterarguments in turn.

Weaver argues that the appellate court's finding that trial counsel gave vigorous representation cannot be reasonable because the cross-examination did not undercut Callico's identification of Weaver and this isolated error is enough to show prejudice. He further argues that impeachment of Callico on this issue would have eliminated the only evidence linking him to the crime, because the murder weapon found in his possession months later cannot directly tie him to the shooting. Weaver argues that the appellate court misapplied *Strickland* by using too

high a burden and requiring him to show that he was innocent, rather than to show that with a competent lawyer, he would have had a reasonable chance of being acquitted.

As an initial matter, the appellate court did not misapply the *Strickland* prejudice prong. The court expressed the standard as "a reasonable probability that the result of [the] trial would have been different," *id.*, which directly tracks the language from *Strickland*. *See* 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). The court then found that Weaver's argument for prejudice was speculative because whether Callico would have testified consistently with the prior report or inconsistently with the other witnesses, had not been shown. The court considered the other "overwhelming" evidence of Weaver's guilt, including the gun evidence and eyewitness testimony, and determined that Weaver had not shown a likelihood that the trial outcome would have been different with this additional cross examination. The appellate court did not hold Weaver to a higher burden or misapply *Strickland*.

Secondly, although it is possible that a single error may be egregious enough to warrant a finding of prejudice, *see Williams*, 557 F.3d at 538, it was not unreasonable for the appellate court to find that the failure to question on the prior police report, when balanced with the other evidence against Weaver, likely did not affect the outcome. Callico had positively identified Weaver as the shooter. Weaver was arrested with the murder weapon in his possession. Although Weaver now argues that the gun should not link him to the crime because guns routinely change hands, the state court was well within bounds to credit the strength of that evidence. This was substantial evidence against Weaver. Furthermore, Callico's version of events had been extensively questioned and impeached. Evidence of Callico's bias, his gang

affiliation and drug use, and questions about how he could have seen what he claimed to see were all revealed during cross-examination. The state court was not unreasonable in crediting the weight of the evidence and in implicitly finding that the jury would have believed Callico's identification despite the additional impeachment.

Weaver's claim of ineffective assistance of counsel for failure to cross-examine Callico on his prior statement is denied.

### 3. Motions to Cite Additional Authority

In conjunction with his petition, Weaver filed two motions to cite additional authority to support his ineffective assistance claims. Docs. 27 & 37. The first reiterates arguments from Weaver's petition and reply, while drawing the Court's attention to *Mosley v. Atchison*, 689 F.3d 838, 848–49 (7th Cir. 2012) (state court was unreasonable to find failure to call two known alibi witnesses who corroborated main alibi witness a strategic decision on limited record before it); *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001) (noting inquiry for deficient performance "is whether counsel's assistance was reasonable considering all the circumstances" (citation omitted) (internal quotation marks omitted)); and *People v. Garza*, 535 N.E.2d 968, 972, 180 Ill. App. 3d 263, 129 Ill. Dec. 203 (1989) (finding, on direct appeal, that counsel was ineffective for failing to confront victim with inconsistencies in description of attacker, among other things). The Court notes these additional cases.

Weaver's second motion to cite additional authority cites additional cases for his ineffective assistance of counsel claims and submits a new affidavit from his trial counsel. Doc. 37. Respondent filed a response to the second motion, arguing the cases are distinguishable. Doc. 40. The Court agrees.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") changed review of § 2254(d) habeas petitions asserting ineffective assistance of counsel claims from a *de novo Strickland* analysis to a reasonableness review of the state court's decision. *See Harrington*, 562 U.S. at 101. Weaver's cited cases were either decided before AEDPA, *see United States ex rel. McCall v. O'Grady*, 908 F.2d 170, 173 (7th Cir. 1990), or use the pre-AEDPA standard, *see Steinkuehler v. Meschner*, 176 F.3d 441, 444 n.1 (8th Cir. 1999) (petition was filed before AEDPA's effective date). Neither case is applicable here.

Also in his second motion Weaver submitted an affidavit from his trial counsel stating in relevant part:

> That on cross examination and in the heat of battle, I apparently did not ask Callico if Wendell Weaver was on foot or in a moving car, which would have been a mistake on my part, because coupled with his Police and Grand Jury statements, it would have been additional impeachment of Danny Callico.
>
> That the jury may have considered this impeachment by inconsistent statements as absolute proof of Callico's perjured testimony.

Doc. 37, Murphy Aff. ¶¶ 12–13. Weaver's attempt to introduce this new affidavit of his trial counsel is improper. The Court cannot consider new factual evidence before it finds under § 2254(d) that the state court's decision was objectively unreasonable. *See Cullen v. Pinholster*, --- U.S. ----, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 1400. At this stage, the Court cannot consider any factual evidence that was not before the state courts and so disregards the affidavit. *See Mosley*, 689 F.3d at 844 ("It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." (quoting *Pinholster*, 131 S. Ct. at 1399)).

### B. Failure to Call Four Witnesses to Testify That Weaver Did Not Have the Gun When Arrested

Weaver also claims that his trial counsel was ineffective for failing to call four witnesses—Fabian Smith, Napoleon Weaver ("Napoleon"), Tawanica Adams, and Monique Davis—to testify that he was not in possession of the murder weapon at the time of his arrest by Officer Pinal. Weaver presented the affidavits of Smith, Napoleon (Petitioner's brother), and Adams in his post-trial motion and the Davis affidavit with his post-conviction petition. Weaver contends that Smith, Napoleon, and Adams would have testified that another person dropped the gun when Weaver was arrested by Officer Pinal. Davis' affidavit also states that she witnessed the moments leading up to Weaver's arrest and saw someone else drop the gun on the sidewalk. On direct appeal, the state appellate court rejected this ineffective assistance claim, finding Weaver had not overcome the presumption that trial counsel strategically decided not to call these witnesses because Smith's affidavit was unsigned and therefore "lack[ed] . . . veracity," Napoleon is Weaver's brother and therefore biased, and Adams gave "inconsistent and unreliable statements," therefore he had not shown that trial counsel "engaged in anything other than trial strategy in deciding that these witnesses would not be helpful to defendant's case." Ex. C at 15. On post-conviction review, the state court held that Davis' proposed testimony was cumulative to that of Smith, Napoleon, and Adams and because this claim had already been determined on direct review, it was barred by *res judicata*.

As an initial matter, that the state appellate court resolved the Davis affidavit issue on the basis of *res judicata* does not preclude this Court's review of that claim. *See Moore v. Bryant*, 295 F.3d 771, 776 n.1 (7th Cir. 2002) ("[W]e have repeatedly held that res judicata is not a bar to consideration of claims in a federal habeas action."). Therefore the Court need not address

Weaver's arguments addressed to procedural default and will consider the Davis affidavit along with the other three affidavits.

For all these witnesses, Weaver argues that their testimony would have created a reasonable probability of acquittal because without the gun evidence, the only evidence linking him to the crime was Callico's identification, which was impeached in multiple ways. Weaver contends that the importance of the gun evidence means the failure to call these witnesses cannot have been a strategic decision, especially because counsel did not properly investigate Adams and Davis to determine what, if anything, they might say. Weaver further argues that, although these affidavits may have some inconsistencies, they were all prepared long after the events and have the overall same message: that Weaver did not possess the gun at the time of his arrest. Weaver argues that the appellate court made improper factual findings about the strength of this evidence in the direct appeal opinion. Finally, Weaver claims that Respondent's focus on the conflicting details in the affidavits points to the need for an evidentiary hearing on this issue.[6]

The appellate court did not make any improper factual findings. That Napoleon is Weaver's brother and therefore has a likely bias was appropriate for the state court to factor into an ineffectiveness analysis. *See United States ex rel. Cisneros v. McCann*, No. 08-CV-4650, 2010 WL 1912330, at *5 (N.D. Ill. May 11, 2010) (not unreasonable for state court to find that counsel's failure to include mother's testimony did not change the outcome of the case). The appellate court is free to make factual findings. *See Green v. Duckworth*, 85 F.3d 631 (Table), 1996 WL 254105, at *2 (7th Cir. May 10, 1996) ("No rule of federal law precludes state appellate courts from weighing evidence when evaluating claims of error; indeed, the Supreme

[6] Weaver cites *People v. Coleman*, 701 N.E.2d 1063, 183 Ill.2d 366, 233 Ill. Dec. 789 (1998), for the proposition that any factual disputes raised by a post-conviction petition must be determined by an evidentiary hearing. *Coleman* deals with dismissal of a post-conviction petition at the state level, not how a federal court determines whether an evidentiary hearing is required under AEDPA for an alleged constitutional violation.

Court has held that, for purposes of collateral review under § 2254, findings of fact by state appellate courts are as conclusive as those made by state courts of first instance.").

Weaver's other arguments are addressed to the potential weight of this evidence, and thus relate to the prejudice from trial counsel's alleged failure to investigate and present this evidence. The appellate court did not directly address prejudice, therefore "we examine this element of the *Strickland* claim *de novo*." *See Rompilla v. Beard*, 545 U.S. 374, 390, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). Although these witnesses may all be saying that someone else dropped the gun, each witness' description of the scene varies in substantial ways, creating inconsistency and undercutting each witness' credibility. For example, Smith and Napoleon remember Weaver and Adams exiting the restaurant before the gun was dropped. Ex. A at C204, C206. Adams' affidavit states that she was still inside the restaurant when the gun was dropped outside. *Id.* at C208–209. According to that affidavit, Adams did not see who dropped the gun. *Id.* at 209. Davis remembers Weaver pulling up in a car, with the police showing up and the gun being dropped immediately. Ex. I at C79. All this lends weight to the state court's finding that trial counsel likely made a strategic decision not to present evidence that was cumulative, conflicting, and would be seen as potentially biased. Furthermore, these witnesses' testimony does not conclusively distance Weaver from the gun and therefore likely would not have changed the outcome of the trial. Weaver did not demonstrate that the failure to present these witnesses was prejudicial to him under *Strickland*.

Thus, the Court denies Weaver's claim of ineffective assistance of counsel for failure to call these four witnesses.

### C. Failure to Call Delaney to Testify Callico Could Not Identify the Shooter After the Incident

Weaver also claims his trial counsel was ineffective for failing to call Delaney, another person riding in the car at the time of the shooting, to testify that Callico told Delaney that he (Callico) could not identify the shooters. Weaver brought this claim in his post-trial motion and included an affidavit from Delaney that stated Callico told him that he (Callico) did not see the shooters. The state appellate court on direct review found that Weaver had not overcome the presumption that trial counsel made a strategic decision not to call Delaney because the affidavit lacked foundation for Callico's alleged statements. Ex. C at 15. Weaver submitted another affidavit from Delaney in support of his post-conviction petition stating that directly after the shooting Callico told him that he (Callico) could not identify the shooters. Ex. V at 22. The state appellate court determined Weaver's claim was barred by *res judicata* because it was raised and rejected on direct appeal. Respondent defends the state appellate court's initial rejection of this claim as reasonable and states that even if this claim was considered *de novo*, Weaver cannot show prejudice because defense counsel had already established that Callico initially told the police that he could not identify the shooter, Callico's credibility was thoroughly questioned, and the gun linked Weaver to the crime.

The state appellate court determined this ineffective assistance of counsel claim on the merits on direct appeal and, as discussed above, that the appellate court determined on post-conviction appeal that this claim was barred by *res judicata* does not mean that it is procedurally barred for federal habeas purposes. *See Moore*, 295 F.3d at 776 n.1. The court's rejection of this claim was not an unreasonable application of *Strickland*. Trial counsel established through cross-examination that Callico had previously told the police that he could not identify the shooters. Delaney's testimony that Callico said the same thing to him, whether just after the

shooting or at some other unspecified time, would have been cumulative.  Weaver did not

demonstrate that this evidence would have added any further impeachment to the already

thorough cross-examination of Callico or undercut the other evidence.  The state court's rejection

of this claim was within reasonable *Strickland* bounds.

Weaver argues that Delaney's account would have further undermined Callico's prior

statement that the shooter was on foot and bolstered the bystander accounts of Lewis and Swiney

that the shooters fired from a car.  This argument goes to the merits of Weaver's claim, but

because the appellate court did not address this facet in its opinion, this does not assist the Court

in determining whether the court unreasonably applied *Strickland*.  *See Harrington*, 562 U.S. at

101 (explaining the federal court must give "deference and latitude" to the state court's

decision).  The additional impeachment potential to an already well-impeached witness does not

make the court's decision unreasonable.

Weaver also contends that Delaney's testimony would do more than echo Callico's prior

statement to police that he could not identify the shooter.  Weaver argues that because Callico

wanted revenge, his statement to his fellow gang member that he could not identify the shooters

is more credible than his statement to the police—the assumption being that Callico would not

have told the police the assailants' names so he could shoot them himself, but may have admitted

to his friend that he did not see the shooters.  Weaver further asserts that Callico had no reason to

lie to Delaney.  This Court does not make a *Strickland* determination *de novo*, rather the Court

must determine whether the state court, on the record before it, reasonably applied that case.  *See

id*.  On direct appeal, the state court considered Delaney's affidavit with Callico's statements and

determined that, without any further information on when or where those statements were made,

trial counsel's failure to place Delaney on the stand did not fall so far below objective standards

of representation as to be a constitutional violation. *See Strickland*, 466 U.S. at 688. That decision was not unreasonable considering the cumulative effect of that proposed evidence and the other evidence against Weaver at trial. Although Weaver argues that Callico's statements to Delaney are more believable than those to the police or at trial, Callico's changing story came to light during cross-examination as trial counsel sought to discredit him. To present Delaney's testimony would have the effect of asking the jury to believe Callico at one time, but then disbelieve him at another. Counsel's strategy seems to have been to paint Callico as a wholesale liar and the appellate court's understanding of this as likely trial strategy was not clear error. Finally, the *res judicata* decision of the appellate court on post-conviction appeal was entirely proper because the ineffective assistance issue regarding Delaney's testimony had been considered and decided on direct appeal.

The Court denies Weaver's claim of ineffective assistance of counsel for failure to call Delaney.

**D. Failure to Call or Depose Rosemarie Swiney**

Weaver also argues his trial counsel was ineffective for failing to call or depose Rosemarie Swiney, who was riding in the car with her father Clifton Lewis and also witnessed the shooting. Swiney was sick at the time of the trial and lived in Indianapolis, so she was unable to testify. Lewis testified that the shots were fired from another car that drove alongside the victim. Swiney's statement to police corroborated that the shots were fired from a car. The appellate court rejected this claim because Weaver could not demonstrate prejudice from the failure to call Swiney when her testimony was entirely cumulative to that of Lewis. Respondent argues this was reasonable and does not warrant federal habeas relief.

Weaver contends that trial counsel had various options to get Swiney's testimony before the jury, including requesting that the State stipulate to her statement to police, calling the officer who took the statement, or taking a short continuance to take her deposition, none of which he did. Weaver further argues that Swiney's testimony was not cumulative to Lewis' because she gave a more detailed account of the shooting—that the two cars bumped into each other and that she saw the victim get shot and duck down. He states her testimony would have corroborated Lewis' and further impeached Callico's prior statement that the shooter was on foot. Swiney's additional details do not make her testimony less cumulative. Further, Swiney's potential to impeach Callico is limited because his prior statement about the shooter being on foot was not introduced at trial. That two, rather than just one, witnesses saw someone shooting from a car would not materially increase the chance that the jury would not believe Callico saw Weaver shoot the victim. The substance of Swiney's testimony was the same as Lewis' and the Illinois Appellate Court was not unreasonable to find that trial counsel made a strategic decision not to produce this cumulative evidence.

The Court denies Weaver's claim of ineffective assistance of counsel for failure to call Swiney.

### E. Failure to Call Two Witnesses to Testify That Another Individual Confessed to the Crime

Weaver also claims trial counsel was ineffective for failing to call two witnesses, Jason Dortch and Monique Tolliver, to testify that another individual named Lupe confessed to shooting the victim. On post-conviction appeal, the appellate court found that the statement by Gary Mullen (aka "Lupe") to these witnesses was inadmissible hearsay, and therefore trial counsel was not ineffective for failing to investigate or call these witnesses. The Illinois court further held that Weaver waived the portion of this claim related to Dortch's testimony because

Dortch's testimony about the confession was the subject of a motion *in limine* and therefore the claim was evident from the record and should have been brought on direct appeal.

The state court's finding that Weaver waived his claim on Dortch's testimony for failing to bring it on direct appeal is an independent and adequate state ground that makes this claim procedurally defaulted for the purposes of federal habeas review. *See Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010). Weaver does not make any arguments to excuse the default.

But even considering this ineffective assistance claim about the testimony of both potential witnesses, the appellate court's decision was not an unreasonable application of either *Strickland* or *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Weaver is correct that *Chambers* sets forth four factors that courts use to determine whether an otherwise hearsay statement-against-penal-interest is nevertheless reliable: (1) the statement was made spontaneously to a close acquaintance shortly after the crime; (2) the statement is corroborated by other evidence; (3) the statement is "in a very real sense self-incriminatory and unquestionably against interest"; and (4) there is adequate opportunity for cross-examination. *See id*. at 300–301. The appellate court upheld the trial court's finding that the statements to Dortch and Tolliver were not corroborated and the declarant could not be cross-examined. Ex. V at 19. The appellate court also noted independently that the alleged confession to Tolliver was not spontaneous or immediate, but rather made the night after the crime and after she prompted him to tell her what happened. *Id.* at 20. None of these findings are unreasonable.

Weaver argues that the court erred because satisfaction of each of the *Chambers* factors is not a condition of admissibility, citing *People v. House*, 566 N.E.2d 259, 289, 141 Ill. 2d 323, 152 Ill. Dec. 572 (1990). However, unlike in *House*, here the appellate court did not require the statements to meet all four criteria. *See id.* (finding trial court's requirement of all four factors

was more than harmless error and directing reconsideration of admissibility at retrial). The court did not emphasize one factor or require all four. Its analysis under *Strickland* and *Chambers* is defensible, and that is sufficient for federal habeas review. *See Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000) ("When the constitutional question is a matter of degree, rather than of concrete entitlements, a reasonable decision by the state court must be honored." (internal quotation marks omitted) (internal alterations omitted)).

The Court denies Weaver's claim of ineffective assistance of counsel for failure to call these witnesses to the hearsay confession.

**F. Eliciting Testimony that Weaver was in Possession of Cocaine When Arrested**

Weaver's final claim of ineffective assistance is that trial counsel erred by eliciting testimony from Officer Pinal that Weaver was in possession of cocaine when he was arrested. The appellate court on direct review found trial counsel's decisions regarding the subject of his cross-examination of Officer Pinal were strategic. The court determined that trial counsel attempted to discredit Officer Pinal by questioning why Weaver would have thrown away the gun but not the drugs. He also asked Officer Pinal about his pursuit of only Weaver out of a group of three or four men and established that Pinal lost sight of Weaver for thirty seconds during the chase before his arrest. That trial counsel would attempt to undercut Pinal's entire testimony, while trying to distance the gun from his client, is reasonable strategy and the court's decision is not so objectively off-the-mark as to warrant habeas review.

Weaver argues that this evidence was prejudicial to him because it introduced evidence of other crimes, thus tarnishing him in the eyes of the jury, and could not have been strategic. Weaver cites two Illinois cases to support this argument. In the first, *People v. Rosemond*, the court determined that trial counsel's questions revealing that defendant used drugs were not

relevant to the issues in the case and his questioning on inadmissible hearsay about how the crime might have advanced defendant in the gang could not have been trial strategy. 790 N.E.2d 416, 428–29, 339 Ill. App. 3d 51, 274 Ill. Dec. 40 (2003). Nevertheless the court found no prejudice because corroborating testimony was provided by the witness on direct. *Id*. Here evidence of the drugs was directly relevant to the officer's credibility and counsel's strategy to undercut that testimony by poking holes in the logic of his story. The testimony about the gun did not directly bolster the State's case, as in *People v. Orta*, 836 N.E.2d 811, 816, 361 Ill. App. 3d 342, 297 Ill. Dec. 80 (2005), where the defense counsel established defendant as a drug dealer, which served "no legitimate tactical purpose" in the drug possession case except to help convict. While the Court should not make "*post hoc* rationalizations" for otherwise indefensible counsel tactics, the state court's holding that this line of cross-examination did not rise to the level of ineffective assistance is "at least minimally consistent with the facts and circumstances of the case." *See Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002).

The Court denies Weaver's claim of ineffective assistance of counsel for eliciting evidence of the cocaine.

**G. Considering Trial Counsel's Performance as a Whole**

The Court considers a claim for ineffective assistance of counsel based on counsel's work "as a whole" because "it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." *See Thompson v. Battaglia*, 458 F.3d 614, 616 (7th Cir. 2006). For all the above reasons, Weaver did not demonstrate that counsel's performance, even taken together, fell below an objective standard of competence and that the state courts' rejection of these claims was "so lacking in justification" that fair-minded jurists must find error. *See*

*Harrington*, 562 U.S. at 103. The Court denies Weaver's claim for ineffective assistance of counsel.

## III. State's Use of Perjured and Coerced Testimony Due Process Claim

Weaver also claims that the State failed to disclose that it coerced Callico into identifying Weaver as the shooter in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and that it knowingly used that perjured testimony in violation of *Napue v. Illinois*, 360 US. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). Weaver presented this issue on post-conviction review via an affidavit from Callico. Respondent argues that the appellate court reasonably rejected the claim because the affidavit did not contain any facts to show the State directed Callico's testimony or knew that he was allegedly lying about Weaver's involvement. The Court agrees.

A prosecutor commits a *Brady* violation by failing to disclose evidence favorable to the accused, 373 U.S. at 87, and under *Napue*, a prosecutor's knowing use of perjured testimony is a Fourteenth Amendment violation, 360 U.S. at 269. The appellate court approved the trial court's conclusion that Callico's affidavit did not offer any factual basis for the coerced testimony claim. The appellate court found that the affidavit alleged that an unknown officer said to Callico, "[w]e need you to put [petitioner] at the scene," but that statement did not rise to the level of instructing Callico to lie about Weaver being on the scene or about what he saw. Ex. V at 24. The court further noted that, in the context of Callico's prior statement to the police that he believed Weaver was involved in the crime (although he had not placed Weaver at the scene as the shooter), this statement reads as the police telling Callico he should cooperate and testify to what he saw at the scene, not that he should lie. *Id.* at 24–25. Weaver argues that Callico did not initially state that Weaver was involved with the shooting and that this factual finding by the

court is unreasonable. In the initial police report, Callico initially implicates an individual known as Octavious in the murder, but Callico also reported "growing jealousy" among rival gang members "particularly Octavious, but including Lupe and Wendell." Ex. B-1 to Petition at 5 (emphasis omitted). This report supports the trial court's finding that Callico had already "identified defendant as possibly having some involvement in the shooting" Ex. V at 26, and that Callico's initial statement to the police was "[h]e told them about [Weaver], but he didn't tell them that he was at the scene shooting but that he thought he might have been involved in the shooting," *id.* at 24. Without clear and convincing evidence to the contrary, this Court must accept all factual findings of the state courts as true. *See Schomig*, 283 F.3d at 846. The state courts' decisions were a reasonable interpretation of the record and the courts' finding that there was no *Brady* violation is reasonable.

Similarly, the state courts found there was no factual basis in Callico's affidavit that the State knew Callico was allegedly lying when he identified Weaver as the shooter. *Id.* at 25. The courts further found that Callico's statement that an unidentified individual "convinced him [Weaver] was involved in the shooting" was not a sufficient basis for this claim because Callico had previously told the police that he believed Weaver was involved. *Id.* The courts also held that the alleged threat related in the affidavit—that Callico "understood * * * the police would make things difficult for me when I got out of jail if I refused to assist them in the case against [Weaver]"—was not specific enough to constitute coercion or indicate that Callico was directly pressured to lie. *Id.* Again, Weaver does not counter these factual findings with clear and convincing evidence and in light of the record before the state courts, their rejection of the *Napue* claim is reasonable.

The Court denies Weaver's due process claim for the use of coerced and perjured testimony.

## IV. Other Crimes Evidence Due Process Claim

Weaver also presents a claim that the admission at trial of "other crimes" evidence, specifically that he pointed a gun at the officer who arrested him, was a due process violation. Respondent argues that this claim is procedurally defaulted because it was not presented as a federal claim through one full round of state court review and Weaver cannot excuse this default. If not defaulted, Respondent argues that the claim is one for the review of a state court's evidentiary ruling, which is not cognizable on federal review. Finally, Respondent argues that, even if considered on the merits, this claim must fail because the Supreme Court has not clearly established that the Constitution prohibits the use of other crimes evidence to support propensity and therefore the state court's decision on this claim was not unreasonable. Because this claim is procedurally defaulted, and even if considered, not cognizable and not an unreasonable application of federal constitutional law, the Court denies Weaver's final ground for his petition.

### A. Procedural Default

A petitioner must fairly present his claims to all levels of the Illinois courts to avoid procedural default. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). To be "fairly presented," a claim must be brought forth on one complete round of state court review, either on direct appeal or in post-conviction proceedings. *Lewis*, 390 F.3d at 1025. In Illinois, this means the issue must have been appealed up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46; *Duncan v. Hathaway,* 740 F. Supp. 2d 940, 945 (N.D. Ill. 2010). When a petitioner has failed to present his federal claim to the state courts and the opportunity to raise that claim has subsequently passed, the petitioner has

procedurally defaulted the claim and it is not available for federal habeas review. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009).

Respondent argues that Weaver presented this issue to the state courts only as a state-law claim on the use of other crimes evidence. Weaver concedes that his appellate counsel did not present this as a federal Constitutional issue. A petitioner "must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir. 1984). This requires the petitioner to present his claim "in such a way as to fairly alert the state court to any applicable constitutional grounds for the claim." *Id.* This can be done, "for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004). In determining whether a petitioner has sufficiently alerted the state courts to the constitutional nature of his claims, the Court looks to whether the petitioner "(1) relied on relevant federal cases applying constitutional analysis; (2) relied on state cases applying federal constitutional analysis to a similar factual situation; (3) asserted the claim in terms so particular as to call to mind a specific constitutional right; and (4) alleged a pattern of facts that is well within the mainstream of federal constitutional litigation." *White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009).

Where the petitioner "rais[es] errors concerning the admission of evidence, he must apprise the state court that he is complaining of more than a simple violation of state law, whether by providing due process analysis and citing relevant federal cases, or by providing a substantive analysis 'clearly implicating' due process concerns, even if federal cases are not cited." *United States ex rel. Bishop v. McCann*, No. 07 C 955, 2007 WL 2893632, at *3 (N.D.

Ill. Sept. 27, 2007) (citations omitted). Weaver did not cite any federal cases or state law cases using a constitutional analysis in his arguments to the state courts. Ex. D at 65–68. Weaver did not frame this claim in terms that would call to mind a federal constitutional right and his mention of due process in a single sentence—characterizing the admission of this evidence as denying him "a fair trial, and due process of law pursuant to the fourteenth amendment guarantee of the United State Constitution," *id.* at 66, in one sentence—is not sufficient to preserve this issue for federal review. *See Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001) ("The petitioner must have placed both the operative facts and the controlling legal principles before the state courts. A mere 'passing reference' to a constitutional issue certainly does not suffice." (citation omitted)). Similarly, although Weaver referenced the trial court's alleged "abuse of discretion" in his state court briefing, the use of that phrase is not enough to call to mind a specific constitutional right and fairly present this constitutional claim to the state courts. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("[A]buse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards."). Weaver did not fairly present his other crimes evidence claim to the state court and thus, procedurally defaulted it. *See Carter v. Ryker*, No. 10 C 3783, 2011 WL 589687, at *4 (N.D. Ill. Feb. 9, 2011) (where appeal challenged trial court's evidentiary rulings as an abuse of discretion under state law and cited only state court cases, none of which applied a federal constitutional analysis, petitioner had not fairly presented his claim of denial of a fair trial based on evidentiary decisions); *Bishop*, 2007 WL 2893632, at *4.

A petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage

of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991);

*Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008).  Cause exists where "some objective

factor external to the defense impeded [the petitioner's] efforts to comply with the State's

procedural rule."  *Strickler v. Greene*, 527 U.S. 263, 283 n.24, 119 S. Ct. 1936, 144 L. Ed. 2d

286 (1999) (citation omitted) (internal quotation marks omitted).  Prejudice exists where the

petitioner shows that the violation of his federal rights "worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions."  *Lewis*, 390 F.3d

at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816

(1982)).  The fundamental miscarriage of justice exception is "limited to situations where the

constitutional violation has probably resulted in a conviction of one who is actually innocent."

*Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002).  This requires new, reliable evidence of

the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to

find him guilty beyond a reasonable doubt."  *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir.

2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).

Weaver argues that this procedural default should be excused because his appellate

counsel was ineffective for failing to argue this as a federal claim.  However, Weaver did not

raise this claim of ineffective assistance of counsel through one complete round of state court

review and therefore he defaulted this claim as well and cannot use it to save his due process

claim.  *See Gray v. Hardy*, 598 F.3d 324, 330 (7th Cir. 2010) ("But to use the independent

constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a

procedural default, [petitioner] was required to raise the claims through one full round of state

court review, or face procedural default of those claims as well.").

Weaver also argues that this default should be excused because he is actually innocent. An actual innocence claim requires new, reliable evidence of innocence so persuasive that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Woods*, 589 F.3d at 377. Weaver states that he has submitted evidence of his innocence through: (1) Callico's initial statement to the police in which he does not identify any shooters, *see* Ex. B-1 to Petition; (2) Lewis and Swiney's statements that the shooting was a drive-by, although they could not see the shooters, *see* Ex. B-2 to Petition; (3) Delaney's corroboration of Callico's initial ignorance of the identity of the shooter and that the shooting was a drive-by, *see* Ex. B-13 to Petition; (4) Tolliver and Dortch's testimony that another individual confessed to the crime, *see* Exs. B-12, B-15, & B-16 to Petition; (5) and Callico's affidavit stating that he lied when he said Weaver was the shooter, *see* Ex. C-1 to Petition. The state courts considered all this evidence. And these affidavits and police reports, even taken together, do not establish that Weaver is actually innocent. These facts undercut Callico's identification of Weaver as the shooter and undercut that the shooter was on foot; however Callico was thoroughly impeached and his shifting identifications aired at trial. Further, the state courts specifically considered and rejected Callico's "recantation" affidavit. These factual findings must stand without clear and convincing evidence to the contrary. *See Schomig*, 283 F.3d at 846. The affidavits of Tolliver and Dortch accuse another individual, Lupe, now deceased, of the crime. However, the Supreme Court has specifically cautioned against this kind of "eleventh-hour affidavit vouching for a defendant and incriminating a conveniently absent suspect" when considering claims of actual innocence. *See House v Bell*, 547 U.S. 518, 552, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006). Weaver has not established actual innocence such that this should excuse procedural default on this claim. Because this claim is procedurally defaulted, federal habeas relief is not available.

### B. Non-Cognizable Claim

Respondent argues that, in the event Weaver asserts that this claim was not procedurally defaulted because it was presented below, the state law claim decided by the state courts is not cognizable on federal review. That is correct. The question of whether evidence of other crimes was properly admitted by the trial court is an Illinois evidentiary law issue that is not reviewable in a § 2254 petition. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

### C. The State Court's Decision

Finally, Respondent argues that, even if the Court were to consider this claim on the merits, the state court's rejection of this claim could not be contrary to, or an unreasonable application of, established Supreme Court precedent because there is no Supreme Court precedent stating the Constitution prohibits the use of other crimes evidence. The Supreme Court has expressly declined to decide "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *Id*. at 75 n.5. For this additional reason, this claim fails on federal habeas review.

The Court finds that Weaver's due process claim for the use of other crimes evidence is procedurally defaulted and, even if considered, denies that claim.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. With respect to claims of constitutional violations denied on their merits, a habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a

constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). The requirement of a certificate of appealability is a threshold issue and a determination of whether one should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

For the reasons stated above, the Court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find this Court's rulings debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack*, 529 U.S. at 484–85)). Accordingly, the Court declines to issue a certificate of appealability.

**CONCLUSION**

For the foregoing reasons, the Court denies Weaver's petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2254 and declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Weaver is advised that this is a final decision ending his case in this Court. If Weaver wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Weaver need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. Motions for reconsideration serve a limited

purpose and are only appropriate to bring to the Court's attention a manifest error of law or fact or newly discovered evidence. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). A motion for reconsideration "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *County of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006) (citation omitted) (internal quotation marks omitted); *see also Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (a Rule 59(e) motion does not "enable a party to complete presenting his case after the court has ruled against him" (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995))).

However, if Weaver wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Dated: March 11, 2016

SARA L. ELLIS
United States District Judge